## INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY V. W. D. DOWNING.

### Delivered May 3, 1897.

**1. Practice on Appeal—Assignment of Error.**

An assignment of error to the effect that the court erred in overruling the demurrers and exceptions of defendant, of which there are several, is too general to be considered, even though the reasons why the court erred are set out in the assignment.

**2. Pleading—Petition Against Railway Company Good on General Demurrer.**

Where, in an action against a railway company for injuries occurring to plaintiff while a passenger on a freight train, the petition alleged that plaintiff had the right to ride on the freight train by virtue of the terms of a written live stock shipment contract, without setting out such terms, this was sufficient against a general demurrer.

**3. Same—Facts Showing Negligence Sufficiently Pleaded.**

See the opinion for pleading held to sufficiently allege facts charging a railway company with negligence because of the failure of its freight conductor to warn a passenger who, on a dark night, was erroneously informed that the train, which had then stopped, was at a station, not to attempt to alight there, the train being in fact on a high trestle.

**4. Same—Averment of Negligence.**

Where the petition states the act or omission complained of, and avers that it was negligence, or that it was negligently done, it is sufficient, unless such act or omission can be declared, as a matter of law, not to constitute negligence.

**5. Negligence Dependent on the Circumstances.**

Where plaintiff was riding on a freight train by virtue of a live stock shipment contract which gave him the right to alight and examine his stock at each station at which the train stopped, the conductor was thereby charged with notice that he might desire and attempt to alight at a given station, and so was negligent in failing to warn him, upon seeing him go out the door of the car, against attempting to alight at a place he knew to be dangerous, but plaintiff did not.

**6. Negligence—Proximate and Concurring Causes—Jerk of Train.**

An erroneous statement of the conductor of a freight train, that the train was then stopped at a station, induced a passenger to go out on the platform, intending to alight, and a start and sudden jerking of the train caused him to fall off. The jerking of the train was not, of itself, of such character as to constitute negligence. *Held,* that the jerking was not the direct and proximate cause of the fall, but only a concurring cause with the negligence of the conductor in making the erroneous statement and his failure to warn the passenger of the character of the place.

APPEAL from Galveston. Tried below before Hon. WILLIAM H. STEWART.

*Davidson & Minor,* for appellant.—1. The accident to appellee was not directly caused by the statements of the conductor, but by an independent and intervening cause, viz., the sudden jerking of the train. Railway v. Bigham, 90 Texas, 223.

2. The following authorities to the point that no authority was vested in the conductor to announce that as a station which was not·a station, and especially by an answer to question asked him by a passenger. Railway v. Kendrick, 32 S. W. Rep., 42; Railway v. Boyles, 33 S. W. Rep., 247; Railway v. McCullough, 33 S. W. Rep., 285.

3. The place where appellee was attempting to alight being at a water tank, where the engine had been stopped for water, and it not being a place for passengers to alight from said car, or get on said car, there was no duty on the part of the engineer in charge of the engine drawing said car to exercise care or caution in respect to appellee getting on or off said car, and the alleged fact of appellee being thrown from the platform, while he was attempting to alight, did not render appellant liable for any injuries to appellee thus received by the sudden jerking of said car, and the court erred in submitting such an issue to the jury. Railway v. Cooper, 2 Texas Civ. App., 42; Cannon v. Cannon, 66 Texas, 682; Railway v. Wickham, 28 S. W. Rep., 917; Railway v. Cash, 8 Texas Civ. App., 569; Railway v. Seligman, 23 S. W. Rep., 298; Railway v. French, 86 Texas, 96.

4. Plaintiff would not have been injured had it not been for the alleged sudden movement or jerking of the train, and this jerking or sudden movement was the proximate and direct cause of his injuries, and there was no evidence showing, or tending to show, that the conductor, in any manner, directed or brought about the alleged movement of the train. Railway v. Reed, 31 S. W. Rep., 1058; Railway v. Cooper, 2 Texas Civ. App., 42; Seale v. Railway, 65 Texas, 278; Tel. Co. v. Andrews, 78 Texas, 306; Brandon v. Railway, 51 Texas, 121; Rozwadosfskie v. Railway, 1 Texas Civ. App., 494; Railway v. Talbot, 67 N. W. Rep., 599; Johnson v. Railway, 2 Texas Civ. App., 139; Ins. Co. v. Tweed, 7 Wall., 52.

*Lovejoy & Sampson* and *Perryman & Bullitt*, for appellee.—1. Where a person is a passenger on a train by virtue of a drover's pass, under a contract with a carrier, that he may look after and care for stock carried by the same train, he has the right at all reasonable times and places, when the train is not moving, to look after and care for said stock, provided he uses such care as a person of ordinary prudence would use in doing so, whether said train stops at a regular station or not. Railway v. Armstrong, 4 Texas Civ. App., 146; Railway v. Ivy, 71 Texas, 409.

2. In a legal sense an act of negligence may be deemed a proximate cause of an injury, although it may not be the last cause in a succession of events which have led to a result. Railway v. Bigham, 38 S. W. Rep., 162; Railway v. Rowland, 38 S. W. Rep., 756; Gonzales v. Galveston County, 80 Texas, 7.

3. As by the terms of the contract appellee had the privilege of alighting from the caboose when the train was not in motion, the appellant had notice of appellee's privilege to do so, and was required to use due care to see that he was not injured.

WILLIAMS, ASSOCIATE JUSTICE.—This is an appeal from a judgment recovered against appellant by appellee for damages on account of personal injuries sustained by him while traveling as a passenger on one of appellant's freight trains, which are alleged to have been caused by the negligence of the conductor.

The petition alleged that on January 2, 1895, plaintiff was riding on a freight train as a passenger from Mineola to Dickinson, by virtue of a live stock contract, made between the plaintiff and the Texas and Pacific Railway Company at Fort Worth, by which the latter agreed to transport plaintiff and one car load of mules upon its own road from Fort Worth to Mineola, and upon defendant's road from Mineola to Dickinson; that plaintiff and the car of mules were transferred at Mineola to defendant, a connecting line of the other road, which "honored" said contract and undertook to transport plaintiff and the car of mules to Dickinson in accordance with its terms; that about 1 o'clock a. m., January 2, 1895, the night being dark, the train carrying plaintiff and his mules stopped, and plaintiff, being in the caboose car with the conductor of the train, inquired of the conductor where they were, and the conductor told plaintiff they were at Riverside station; and plaintiff, believing and relying upon what the conductor had told him, got up and started out of the caboose car for the purpose of getting off to attend to and look after the mules, which it was his right and duty to do under the terms of his contract, made and entered into for his and their transportation, as hereinbefore alleged.

That plaintiff walked out of the caboose to the lower step on one side of the car at the rear end of same, having hold of the hand-rail with his right hand and with his right foot resting on the lower step; he extended his left foot downward towards what he supposed was the depot grounds, with a view of alighting from the car for the purpose of looking after his mules; that while plaintiff was in this position, the train was suddenly started with a jerk, jar, or jostle, and plaintiff was violently precipitated to the ground, a distance of about thirty feet, receiving injuries, which are specified; that the train, instead of being at Riverside station, as plaintiff was informed by the conductor, was over a line of trestle which spans the Trinity River bottom; that if plaintiff had known the conditions which surrounded him at the time he attempted to alight he would not have made the attempt; that he did not know and could not discover the peril he had been subjected to by the conductor on account of the darkness which then prevailed; that his injuries were caused by the gross negligence of the defendant, its servant or agent, as hereinbefore alleged, and the gross negligence of said conductor of said train was the direct and proximate cause of such injuries, without fault on plaintiff's part.

The petition then alleged the damage which resulted to plaintiff, amounting to $50,000, for which sum he prayed judgment.

The defendant urged the following exceptions to the petition, which were overruled:

"1. Defendant demurs to plaintiff's petition, for this, the matters and things therein contained in the manner and form alleged, are insuffi-

cient in law to enable the plaintiff to maintain his suit.

"2. Defendant specially excepts to the petition, in that the same does not allege the terms of the stock contract under which it is stated therein the plaintiff was riding on a freight train of the defendant company, permitting him so to ride, or affecting the rights and liabilities of the parties wth respect thereto, nor is any breach of the contract, or violation of duty arising therefrom, or under the law of the land, charged against the defendant.

"3. Defendant specially excepts to all that portion of the petition alleging that the plaintiff was told by the conductor that the train was at Riverside station, and setting out his acts based on said information, and charging liability on the defendant for injuries alleged to have been received in consequence thereof:

"(a) Because it does not appear that the conductor knew, or was informed that plaintiff proposed to leave the train.

"(b) Because the matters so charged were in nowise a proximate or efficient cause of plaintiff's alleged injuries.

"4. It affirmatively appears from the plaintiff's petition that the injury complained of was caused, or proximately contributed to, by the plaintiff's own negligence."

The defendant pleaded a general denial, and set up specially the terms of the contract of transportation, stated further on, and negligence on plaintiff's part contributing to his injuries.

The second assignment of error attacks the ruling of the court on exceptions, and is as follows: "The court erred in overruling the demurrers and exceptions of said defendant, contained in its second amended original answer to plaintiff's petition, because it appears from said petition that the place where plaintiff was injured was not a station of defendant; and it further appears from said petition that the only information plaintiff had, and upon which he left the train, that such place was a station, was the answer of the conductor to a question from said plaintiff as to where they were, and it thus appeared from said petition that plaintiff was not authorized or justified, from said alleged answer of said conductor, to alight or attempt to alight from said train at such place, and that the said defendant was in no manner liable for the injuries alleged to have been caused by reason of plaintiff's alighting, or attempting to alight, from said train at said time and place; and it further appeared from said petition that the alleged injuries were not the direct and proximate effect of the said alleged answer of the said conductor in reply to such question, viz., as to where the said train had stopped, but the direct effect of a wholly independent and intervening cause, viz., an alleged sudden moving or jerking of the train, by which appellant was thrown to the ground.

Appellee objects to this assignment as being too general, and we think it is not sufficient to present any question but that raised by the general demurrer.  The exceptions raised several different questions, and the overruling of them all can not thus be presented by one assignment.  It is true that the reasons why it is claimed the exceptions should have been

sustained are stated in the assignment, but the particular exception, in overruling which the error is claimed to have been committed, is not pointed out. We understand that it is the ruling attacked, and not the reasons urged to show its error, that must be specified in the assignment. Rule 25; Land Co. v. McClelland Bros., 86 Texas, 192. Thus considered, the assignment points to no one ruling of the court, but to several, in some of which it is claimed, for the reasons stated, the court committed error. We must therefore decline to consider the assignment sufficient to bring in review the ruling upon the special exceptions.

But, as we must see that the petition is sufficient to sustain a judgment, we must necessarily determine the question raised by the overruling of the general demurrer. The allegations of the petition upon some points are certainly meager, but in passing upon a general demurrer, "every reasonable intendment arising upon the pleading excepted to must be indulged in favor of its sufficiency." Rule 17 for District Courts.

As we view the petition, one of its most important allegations is the right and duty asserted by plaintiff under the contract to alight from the train to look after his stock. If he was entitled only to the privileges of an ordinary passenger, who had not reached his destination, it could hardly be admitted that he had any right to get off at any intermediate point, so as to make it the duty of the conductor to exercise special watchfulness to prevent him from attempting to do so; and hence, it would doubtless be true that the question and answer, and other circumstances stated in the petition, would not present any question of negligence vel non to be submitted to a jury. It was therefore essential that the petition should show some right under the special contract. The contract is alleged with sufficient fullness to show that plaintiff was a passenger and entitled to the privileges which belong to passengers generally, but in attempting to show the right claimed to get off at Riverside station, the pleader alleges only that it was his right and duty under the terms of the contract to do so. The provisions of the contract which conferred the right should have been set out, and because of the failure to do so, the petition was doubtless defective. But the defect was not one which a general demurrer would reach. While the allegation states a conclusion, it is not merely a conclusion of law. It involves the assertion that the contract contained terms conferring the right claimed, and we are therefore of the opinion that as to this, the petition was good on general demurrer.

The next question is as to the sufficiency of the allegations to present a question of fact as to the defendant's negligence upon which the plaintiff was entitled to have the decision of the court or a jury upon the evidence. As we have seen, the petition sufficiently shows that, if the train had stopped at Riverside station, plaintiff would have had the right under his contract to get off for the purpose of caring for his mules. The defendant being a party to the contract, its servant, the conductor, was bound to know of and respect this right, and it is fair to conclude that he knew, or ought to have known, that if plaintiff was led to believe that

they had reached and had stopped at that point, he at least might attempt to alight. Knowing this, according to the allegations of the petition, and knowing also that the train was standing upon a trestle, where an attempt to alight would be attended with the most deadly peril, the conductor informed plaintiff that the train was at the station. Relying upon this, and being unable, on account of the darkness, to see the danger of the situation, plaintiff attempted to alight and was hurt. The petition charges that this was negligence on the part of the conductor, and as matter of law we can not declare that it was not. The statement that the train was at Riverside station was not true, and a jury might conclude that it was negligence. The allegation is, that it in fact misled plaintiff, and that, without fault on his part, he acted on it. From this the fair intendment is, that it was reasonably calculated to have the effect which it produced. Ought the conductor to have foreseen this as a result that might follow, and have avoided the misleading statement or have cautioned plaintiff? This is a question of fact for the decision of the court or jury hearing the evidence. We know of no rule which would authorize the court to say, as law, that the allegation of negligence is not warranted by these facts. Furthermore, we think the allegations that plaintiff and the conductor were in the caboose together, and that plaintiff, on receiving the answer alleged, went out of the car, and the indirect statement that plaintiff was subjected to the danger by the conductor, together with the general allegation of negligence, are sufficient to raise the question, whether the conductor did not see or should not have seen the plaintiff and warned him against the danger of going out of the car. It is true that the act of negligence alleged is the statement that the train was at the station, but if it be conceded that the petition is not sufficient to admit evidence of any other, it is, we think, nevertheless true that the averment, in effect, that it was done negligently, is sufficient to admit proof of the circumstances attending and giving color to it. 2 Thomp. on Neg., p. 1246, and authorities cited. The allegation that the act was negligent is perhaps a conclusion, but it is not wholly one of law. It amounts to a charge that the act was done under circumstances to make it negligent; that is, that as done, it was a violation of the duty which the carrier owed the passenger to use proper care for his protection.

The contract set up in the petition distinguishes this case from those cited, in which ordinary passengers, before reaching their destination, have gotten off at intermediate stations.

Here the question of negligence must be determined with reference to plaintiff's rights and duties under that contract, and the consequent duty of the carrier to know of and respect such rights. Other cases referred to are those in which passengers, assuming that their destination has been reached, because of the announcement of it and the stopping of the train, when in fact the train has not arrived at the station, have attempted to alight and received injuries.

The discussions in these cases are instructive, and, by analogy, give some aid in the determination of this one; but they are not wholly appli-

cable. The plaintiff here had the right under his contract to get off at the station, as a passenger reaching his destination has the right to get off there. But the conductor of an ordinary passenger train is bound to know that a passenger who has arrived at his destination will get off, while in a case like this, whether he should know or foresee that the passenger would attempt to alight, must depend on all of the circumstances. On the other hand, the information here was given after the train had stopped, and was to the effect that it was at the station. There could never be any doubt that such information given by the conductor with respect to the destination of a passenger, after the train was stopped, would authorize the latter, if acting prudently, to alight. But here the proposition is not so much that the conductor's statement was an invitation to alight, as that it was calculated to mislead plaintiff and cause him to get off, and that this should have been foreseen and guarded against.

We have discussed the questions raised upon the pleadings more fully than we think is necessary, to avoid having to go over the same subject in our conclusions of law based upon the evidence. When the petition states the act or omission complained of, and avers that it was negligence, or that it was negligently done, we think it is sufficient, unless such act or omission can be declared as matter of law not to constitute negligence. This, we have seen, is not the case here. See authorities above cited.

The evidence shows that plaintiff was a passenger, as alleged, and that he was hurt at the time and place alleged, by falling from the steps of the caboose car, standing on the trestle, to the ground, and thereby received the injuries complained of. The damages allowed are not excessive. It was also shown that plaintiff was traveling under a contract, as alleged, for the transportation of the carload of mules and of plaintiff in charge of them. The contract is lengthy, and is set out in the record. It does not in express terms stipulate that plaintiff shall have the right to get off and look after his mules, but we think it clearly recognizes his right to do so at points where the train may stop; and plaintiff testified that it is customary and necessary to at intervals of time examine the car containing such animals, to see whether or not they are down or fastened between the slats on the side of the cars. We do not understand it to be denied that plaintiff had the right and that it was proper for him to get off at proper times and places, and in a prudent manner, when the train was stopped. And hence, as the contract is lengthy, we do not set it out in our findings. The train was a through train from Palestine to Willis, and it was not intended for it to stop at any intermediate stations, or at other places except to get water and for refreshments. It did, in fact, stop at a number of places, and it was only at times when it did so that plaintiff claimed the right to look after the mules. As to most other material points in the case there is great conflict in the evidence. The plaintiff testified that he had gotten off at several other places between Riverside and Palestine for the purpose of examining the car of mules. The conductor denied this, stating that plaintiff slept during the whole of the trip. As to the circumstances attending the mishap at Riverside,

there was also a conflict. Plaintiff testified that he was reading a newspaper and was giving no attention to the movements around him, and that after the train stopped, he asked the conductor, "Is this the station?" and the conductor replied, "Yes, this is Riverside;" that witness had not been out to look after his stock for some time, and he got up and walked to the rear door of the train; that the conductor was standing with his lantern and some papers in his hand, and as witness went out "came right after" him; that witness went out upon the rear platform of the caboose, and holding to the hand railing around it, stepped upon the lower step and felt downward with one foot for the ground; while standing thus the train moved or jerked and threw him off, and he fell from the trestle. He stated further, that, not reaching the ground with his foot, he did not intend to step off, but was about to turn back when the movement of the train came. It was so dark that plaintiff could not see the situation, there being no lights around.

The conductor's evidence is totally at variance with that of plaintiff. He states that he was sitting at his desk, writing on his reports, when he heard the rear door of the car slam, and, knowing that it could only be the plaintiff who had gone out, immediately followed, calling to plaintiff, but that the latter fell from the step before he could reach him. He stated that plaintiff had been asleep and that no conversation of the sort testified to by plaintiff took place between them before the plaintiff left the car. They were alone in the caboose. Plaintiff knew nothing of the stopping places along the road, and the conductor knew that the train was standing on the trestle, where it had stopped to take water.

There is also a conflict of evidence as to whether or not a movement of the train occurred when plaintiff fell; the plaintiff testifying in the affirmative, and the conductor, engineer, and fireman in the negative.

The defendant introduced evidence of statements made by plaintiff soon after the occurrence, and during the same night, which tend to weaken his narrative of the occurrence. For the most part, however, these, except as testified to by the conductor, consisted of exclamations as to his folly in walking off the car; that he was to blame, and that he blamed no one else, etc., and not of any account of the details of the occurrence. There was evidence tending to show that plaintiff was intensely suffering when these statements were made, and that he was not entirely rational; but there were also circumstances tending to show that he was in full possession of his faculties.

On the other hand, plaintiff introduced evidence of statements made by the conductor (denied by him), to the effect that plaintiff, before leaving the car, had asked him "What place is this?" and that he replied, "Riverside."

Besides the evidence recited, in order to show the nature of the case, there was a great mass of testimony which it is impracticable to state. The essential facts of the case are involved in the conflict between the testimony of the plaintiff and that of the conductor, and the other evidence is intended to corroborate or contradict the one or the other.

We are urged to reverse the judgment on the ground that the preponderance of the evidence is so strong against plaintiff that, notwithstanding the verdict and judgment below, he ought not to be allowed to recover. But we do not think the case belongs to that class in which an appellate court is authorized, upon the ground stated, to disregard the decision of the jury and the district judge. There is evidence sufficient, if true, to sustain the action taken below, and if this court, reading the record, should be inclined to view the facts differently, this would not authorize a reversal. If there is a preponderance against plaintiff, it is not so great as to justify this court in setting aside the verdict.

Giving proper weight to the verdict, we conclude, upon the facts, that the conductor did tell the plaintiff, in answer to his question, that the train was at Riverside station, when it was not, but was upon the bridge; that in so answering, under the circumstances shown, without caution to the plaintiff, as well as in permitting plaintiff to leave the car, the conductor failed to use the care which ordinarily prudent carriers of passengers would use in such situations, and was guilty of negligence; that the conductor, if exercising such care, should have foreseen the result which followed; that his negligence was the proximate cause of plaintiff's injuries, and that plaintiff was not guilty of contributory negligence in the effort to get off the train, under the circumstances existing.

The jerk of the train which threw plaintiff from the car is not shown to have been of such character as, by itself, to have been negligent, and constitutes no ground of recovery. But the act of the conductor and the movement of the train are both chargeable to defendant, and are to be viewed together. The efficient cause of the injury was the negligence of the conductor.

Our views upon the principal questions of law presented are expressed in the opinion upon the exceptions. From what is there said, it follows that we hold that for the negligence of the conductor, as stated above, the defendant is liable.

The charge of the court, with the special instructions given, submitted the case fairly to the jury. The only objection which can be urged to the charges is that they are rather abstract, but we think they submit the issues of this case with sufficient directness. The court could not properly restrict the attention of the jury to any one of the facts in evidence, for instance, the effect to be given to the question asked and the answer given, but properly left the issue of negligence vel non to be decided from all of the circumstances considered together.

The defendant asked twenty special instructions, of which the fourth, fifth, eighth, and nineteenth were given and the others refused. The number and length of those, the refusal of which is assigned as error, are too great to admit of their insertion.

The sixth, ninth, eleventh, and twelfth are objectionable for the reason already given; that they stated the issue so as to limit the consideration of the issue to the effect of the question and answer, when all of the circumstances surrounding the parties at the time should be considered in

determining whether or not the act of the conductor was negligence, which proximately caused the injury. These charges are all, we think, open to the objection that they put too much stress upon a view of the case, which is partial only. Railway v. Garcia, 62 Texas, 285. Other and more evident objections to some of them might be pointed out, but as this applies to all of them, it is deemed sufficient.

The seventh is to the effect that defendant was not bound to stop its train at the place where plaintiff was injured, and was inapplicable. No such question was involved, the train having, in fact, stopped.

The third, fourteenth, and sixteenth requested charges are on the subject of contributory negligence, which was sufficiently covered by the charges given.

The seventeenth and nineteenth state the proposition, in substance, that though the conductor had caused the plaintiff to assume the dangerous position, yet if the direct and proximate cause of the injury was the jerk of the train, plaintiff could not recover. The jerk in the case supposed could not, alone, be considered the proximate cause, for the reason that the negligent act of the conductor had exposed plaintiff to danger from the jerk. Both were the acts of the defendant; both were alleged and both contributed.

Special charge number 2 required that the conductor should have "directed" plaintiff to alight, which is not necessary to a recovery.

Charge number 10 was, that if plaintiff's injury was purely accidental, or proximately caused by plaintiff's own negligence, plaintiff could not recover. The charge given covered both points. The jury were instructed that the mere fact that plaintiff was injured by falling from the step of the caboose, or by being jarred therefrom, would not render the defendant liable, but that negligence on its part must have caused the injury; and were also fully instructed as to contributory negligence. This included the whole of the propositions in the special charge. Besides, there was hardly any room for the theory of accident. The mishap was caused either by the negligence of the plaintiff or that of the defendant, or of both concurring.

The fifteenth special charge, that if the danger of the getting off was as open to the observation of plaintiff as it was to the employes of defendant, plaintiff could not recover, would have been misleading. The situation was fully known to the conductor and wholly unknown to plaintiff, and yet, at the time, it was as open to the observation of one as of the other. The affirmative duty rested on the conductor to use all reasonable care, such as carriers of passengers must use, to guard the passenger, and on the latter to use ordinary care for his own safety. The situations of the two were different, and this made the charge inapplicable.

The charge of the court did not assume any of the facts against defendant, and is not open to the objection made in the twelfth assignment.

*Affirmed.*

Writ of error denied.