STEPHENVILLE N. & S. T. RY. CO. v. SCHRANK. (No. 5443.)

(Court of Civil Appeals of Texas. Austin. Feb. 24, 1915. Rehearing Denied March 31, 1915.)

1. RAILROADS &why;443—CONSTRUCTION—INJURIES TO STOCK—EVIDENCE.

In an action for the death of plaintiff's mule, resulting from injuries received by it while crossing a railroad cattle guard, evidence as to negligent construction of the guard held sufficient to support a verdict for plaintiff.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1608–1620; Dec. Dig. &why;443.]

2. RAILROADS &why;447—CONSTRUCTION—INJURIES TO STOCK — INSTRUCTIONS — CATTLE GUARD—STATUTES.

In an action for the death of plaintiff's mule, resulting from injuries received by it while crossing a railroad cattle guard at the point where the track entered plaintiff's pasture, it was not error for the court to instruct the jury as·to the law of Rev. St. arts. 6596, 6598, requiring every railroad to place a sufficient cattle guard at the point of entering a field and to keep it in good repair, such guard to be constructed and kept in repair so as to protect the field from the depredations of stock of every description.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1642–1650; Dec. Dig. &why;447.]

3. RAILROADS &why;447—CONSTRUCTION—INJURIES TO STOCK — INSTRUCTIONS — DUTY OF RAILROAD.

In an action for the death of plaintiff's mule, resulting from injuries received while crossing a railroad cattle guard, an instruction that in order to find for the plaintiff the jury must find that the railroad failed to construct and keep in repair a sufficient cattle guard, and also that it permitted wheat and other grasses to grow on the track near the cattle guard, so that stock were thereby attracted, was more favorable than defendant was entitled to, since if the guard was insufficient, the railroad was liable, regardless of whether it permitted grass to grow thereon.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1642–1650; Dec. Dig. &why;447.]

4. EVIDENCE &why;219—ADMISSION—ACT OF DEFENDANT.

In an action for injuries to plaintiff's mule, caused by a defective railroad cattle guard, evidence that the company had removed a guard like the one on plaintiff's land from the land of another, and had substituted therefor a different kind of guard, was admissible as a circumstance tending to show an admission by the company that the former guard was insufficient.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 762–770; Dec. Dig. &why;219.]

5. RAILROADS &why;442—CONSTRUCTION—INJURIES TO STOCK—ADMISSIBILITY OF EVIDENCE —SIMILAR ACTS.

In an action for injuries to plaintiff's mule received while crossing a railroad cattle guard, evidence that stock frequently passed over cattle guards of the railroad was admissible, when confined to guards like that on which plaintiff's mule was injured.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1596–1607; Dec. Dig. &why;442.]

Appeal from Hamilton County Court; J. L. Lewis, Judge.

Action by F. W. Schrank against the Stephenville North & South Texas Railway Company. Judgment for the plaintiff, and defendant appeals. Affirmed.

Marshall Ferguson, of Stephenville, for appellant. Eidson & Eidson, of Hamilton, for appellee.

JENKINS, J. This is a suit to recover damages on account of injuries to a mule belonging to appellee, occurring by reason of the alleged negligence of appellant in failing to properly construct and keep in repair a cattle guard on its line, and in permitting grass, wheat, and oats to grow thereon. The guard in question is what is known as a metal guard, and was described by appellant's roadmaster as follows:

"These guards are eight feet long and are made in four sections, two inside of the rails and two outside. The uniform width of the spikes are 2 or 2.4 inches at the bottom. They are made from about ⅛ to ³⁄₁₆ inch iron; that is the thickness of them. The general way of making them is to cut out pieces and turn them up, leaving a projection. They are laid flat upon the ties between the wing fences, the spikes or prongs are about 3 inches high. There must be 12 rows of them to each section, that is, a row about every 2½ or 3 inches. They are about as far apart in both directions, both lengthwise and crosswise of the guard. These spikes are made by cutting the metal in V shape, and it is

round on the corners. The bottom part of the V is down."

We quote from the testimony of appellee, set out in the statement of facts, as follows, showing how the injury occurred:

"That when he first saw this mule on this occasion he saw it on the right of way, and that there was no way for it to have gotten in there except over the cattle guard. That the fence was in good repair at the time. That he saw the mule go from the right of way back into the pasture over the guard. That he did not see anything unusual about the mule, and thought it was all right, and started away and got some 25 yards away, when he turned around to see if the mule was going to the other stock, and he saw the mule come in across the cattle guard the second time. That he motioned with his hand, and saw that the mule turned and walked back over the guard into the pasture, and then noticed that she was injured. That he examined the mule and found that there was a hole in her foot, nearly an inch and a quarter deep and an inch wide. That the cattle guard was not dug out. That stock passed over it frequently."

Thompson, a witness for appellee, testified that soon after appellee's mule had been injured be examined the cattle guard, and that grass, oats, and wheat were growing on it, and on the track near it. The mule died from the effects of the injury. Appellant answered by demurrer and general denial. The case was tried in the county court on appeal from the justice's court, and judgment was rendered for appellee for the value of the mule.

[1] Appellant's first assignment of error is on the refusal of the court to peremptorily instruct the jury to return a verdict for the defendant. In this there was no error. The evidence raised the issue of negligence, and is sufficient to sustain the verdict of the jury in appellee's favor on that issue. In addition to the testimony above set out, it was shown that other stock frequently crossed this cattle guard, and other of appellant's cattle guards in the same neighborhood in all respects similar in construction and state of repair as the one on which appellee's mule was injured.

[2] Appellant's second assignment of error is that the court erred in the seventh paragraph of its charge, which is as follows:

"It was the duty of the defendant, under our statutes, to have placed a good and sufficient cattle guard at the points of entering plaintiff's field or inclosure with its railroad, and to keep them in good repair. In all cases the statute requires that such cattle guards or stops shall be so constructed and kept in repair as to protect such fields and inclosures from the depredation of stock of every description."

Such is the law in this state, and the court did not err in so instructing the jury. R. S. arts. 6596, 6598, 6600; Railway Co. v. Sproles, 47 Tex. Civ. App. 294, 105 S. W. 521.

[3] Appellant's third assignment complains of the eighth paragraph of the court's charge. This paragraph was more favorable to appellant than it was entitled to. It instructed the jury that in order to render a verdict for the appellee they must find that appel-

lant failed to construct and keep in repair a sufficient cattle guard, and also that it permitted wheat and other grasses to grow upon its track near said cattle guard, so that stock were thereby attracted and caused to go upon said cattle guard. If the cattle guard was not such as is required by statute, appellee was entitled to recover, regardless of whether or not appellant permitted grass or wheat to grow thereon.

[4] Appellant's fourth assignment of error is as to the court's permitting the witness Walton to testify, over objection, that appellant formerly had in use a cattle guard on his mother's place "just like the one on which plaintiff claims his mule was injured," but that appellant had taken up said cattle guard, and had erected in lieu thereof a pit guard. Appellant argues this might have been construed by the jury into an admission on the part of appellant that the metal guard was insufficient. It was permissible to prove such admission, and consequently any circumstance tending to prove the same was admissible in evidence.

[5] Appellant's fifth assignment of error is that the court erred in permitting appellee to prove that stock frequently passed over other of appellant's guards. We quote from the learned court's explanation to appellant's bill of exceptions as to admitting this testimony, as follows:

"The witnesses were not permitted to testify as to stock crossing other cattle guards than plaintiff's until it was shown that the guards were all alike; the testimony being undisputed that the guards over which stock passed were all alike and in the same condition, except perhaps there was more grass growing on the guard on the plaintiff's land than on the others."

Such being the fact, there was no error in admitting the testimony as to the other guards.

Finding no error of record, the judgment of the trial court is affirmed.

Affirmed.