## HOUSTON & T. C. RY. CO. v. KUJAWA.
### (No. 80.)

(Court of Civil Appeals of Texas. Waco. June 12, 1924. Rehearing Denied Oct. 16, 1924.)

**1. Railroads ⬳446(1)—Whether mule, when struck, was within right of way fences held for jury.**

Whether mule, when struck by car, was within railroad's right of way fences or not *held*, under evidence, for jury.

**2. Railroads ⬳442(3)—Evidence of rains destroying fences held admissible.**

In action for death of mule alleged to have been struck within right of way fences, evidence that there had been heavy rains which washed away all fences, and that they remained down for about two weeks, was admissible on issue as to where mule was struck and as to defendant's liability.

**3. Trial ⬳352(1)—Issue as to where mule was when struck held to sufficiently present defendant's theory of case.**

Issue whether mule when struck was "inside of right of way fences * * * or was * * * then attempting to cross cattle guard ahead of the car," *held* to clearly present defendant's theory that mule was struck on cross-

ing and thrown by force of impact across cattle guard into right of way inclosure.

**4. Railroads ⬳412(4)—"Proper cattle guards" required.**

Railroad has duty in fencing right of way, to construct and keep in repair proper cattle guards; a "proper guard" under Rev. St. art. 6600, being one that is reasonably sufficient to prevent passage of stock.

**9. Trial ⬳351(5)—Issue whether mule got inside of right of way fences through defective fences held sufficiently submitted.**

Issue whether mule, if struck inside of right of way fences, got there through defective fences *held* sufficiently covered by issue submitted.

**6. Railroads ⬳442(3)—Evidence of condition of fences after killing of mule held admissible.**

In action for killing of mule, tried more than year after the occurrence, permitting testimony as to examination of right of way fences made by witness two weeks before trial, *held* not error, in view of evidence that there had been no change.

Appeal from District Court, Falls County; Prentice Oltorf, Judge.

Action by Mike Kujawa against the Houston & Texas Central Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

A. P. McCormick, of Waco, and Frank Oltorf, of Marlin, for appellant.
W. E. Rogers, of Marlin, for appellee.

GALLAGHER, C. J. Appellee, Mike Kujawa, sued appellant, Houston & Texas Central Railway Company, in the justice court to recover the sum of $175 which he alleged was the value of a mule belonging to him alleged to have been killed by the negligence of appellant. Appellee charged that appellant was negligent in failing to keep its right of way fenced, and that said mule entered such right of way through defective fences or where such fences were down. Appellee recovered judgment in the justice court. Appellant carried the case to the county court on appeal. The case was tried in that court before a jury on special issues. Upon the verdict of the jury in response to such issues the court rendered judgment in favor of appellee against appellant for the sum sued for. The case is before us for review on appeal.

The evidence showed that appellee's mule was found dead by appellant's track within its right of way fences about 107 feet from a road crossing. There were indications on the body of the mule that it had been struck on the hip. The operator of one of appellant's motor cars testified as follows:

"I remember the occasion of striking a mule between mile posts 4 and 5 in June of last year. On that morning it was drizzling rain, and as I approached this crossing I sounded the whis-

tle for the crossing, and there was a bay mule standing on the crossing at the time, and I rang the gong, and got him off the track, and my attention was attracted to him to keep him from rebounding and coming back on the track, when all at once a second mule come from the other side and instead of going across, he struck down the track, and I was too close to escape striking him, and I struck him on the right of way. As to where he was when the train came actually in contact with him I will state that I didn't see him; the first mule attracted my attention. As a general rule nine out of every ten will recross if you don't watch them, and my attention was attracted to the first one; I don't know where this other mule was or anything about him. I did not see the mule until I was nearly on him; instead of going across he started down the track. When the car hit him he had started down in the right of way fence toward the cattle guard. I did not hit him before I got to the cattle guard; he was middle ways of the cattle guard when I hit him; he was on the crossing and started in the right of way. I hit him in the rump. He hadn't gotten on the cattle guard when I first hit him. I knocked him to the right-hand side of the right of way; I always clear the right of way before I leave them; he wasn't over 30 feet inside the right of way. He was on the crossing when the car hit him, and I knocked him into the inclosure."

[1, 2] The court admitted, over the objection of appellant, evidence that there were heavy rains about that time which washed away all fences in the locality where the mule was killed, and that the fences remained down about two weeks. The gist of appellant's objection to the testimony was that the evidence was insufficient to show that appellee's mule was inside its fences when it was struck, and not on said crossing as contended by it. No witness testified to seeing the mule struck except the one operating the motor car at the time, whose testimony is recited above. We think, however, that it was a question of fact for the jury under all the evidence whether said mule was struck on appellant's track within its right of way fences or not, and that the evidence so objected to was properly admitted on such issue, and also on the issue of appellant's liability for the value of stock killed on account of failure to maintain its right of way fences. M. K. & T. Ry. Co. v. Tolbert, 100 Tex. 483, 101 S. W. 206.

[3] The court submitted to the jury the following issue:

"When the mule in controversy was struck by the car of the defendant company, was said mule then inside of the right of way fences of the defendant company, or was said mule then attempting to cross the cattle guard ahead of the car? In this connection you are charged that cattle guards connecting with right of way fences at said crossings are considered parts of fences.

"The burden of proof rests upon the plaintiff to establish by preponderance of the evidence that said mule was inside of the right of way when struck by the car."

The jury answered said issue as follows: "The mule was inside of the right of way fence."

Appellant objected to the submission of said issue on the ground that it did not clearly present its theory that the mule was struck on the crossing and that the force of the impact threw it across the cattle guard into its right of way inclosure. The motorman, the only witness to the striking of the mule, testified that on entering upon the track said mule started down the same toward the cattle guard. His testimony is confused as to whether he struck the mule just before it reached the cattle guard or whether in its fright it actually ran onto the cattle guard before it was struck. The issue as presented involved a finding by the jury whether said mule was struck inside the right of way fences on the one hand or before it had crossed the cattle guard on the other. As framed it gave appellant the benefit of its theory that the mule was struck on the crossing if it had not actually crossed the cattle guard when struck. Such presentation was in accord with the evidence of appellant's witness, who was the only eyewitness to the accident, and is not subject to the objection so urged.

Appellant requested the court to submit the following special issue:

"If you have answered the court's first issue to the effect that, when the mule in controversy was struck by the car of the defendant company, said mule was then inside the right of way fences of the defendant company, then you are requested to answer this issue: Did said mule get inside the right of way fence of the defendant company through defective fences or was said mule upon the public crossing and ran across the cattle guard to the point inside of the right of way fences where he was struck?"

The court modified the same so as to make the interrogatory part thereof read as follows:

"Did said mule get inside of the right of way fences of the defendant company through defective fences?"

To this interrogatory the jury answered, "Yes."

[4, 5] This issue as originally requested and as submitted was to be answered only in the event the jury found that said mule when struck by the car was inside the right of way fences. It invoked a finding by the jury with reference to whether the presence of the mule inside said inclosure was the result of the failure of appellant to maintain proper fences. The court charged the jury that cattle guards were to be considered a part of the right of way fences, and appellant did not object to such instruction. It was the duty of appellant in fencing its right of way to construct proper cattle guards and wing fences at the crossing in question and to keep the same in repair. A proper cattle guard is one that is reasonably sufficient to

prevent the passage of stock. R. S. art. 6600; Ft. W. & D. C. Ry. Co. v. Polson (Tex. Civ. App.) 106 S. W. 429, 430; M. K. & T. Ry. Co. v. Tolbert, 100 Tex. 483, 486, 101 S. W. 206; Saine v. M. K. & T. Ry. Co. (Tex. Civ App.) 85 S. W. 487; S. N. & S. T. Ry. Co. v. Schrank (Tex. Civ. App.) 175 S. W. 471, 472; I. & G. N. Ry. Co. v. Vogel (Tex. Civ. App.) 184 S. W. 229, 231; T. & P. Ry. Co. v. Sproles, 47 Tex. Civ. App. 294, 105 S. W. 521. If appellee's mule was struck inside the right of way fences, and if it was there because of defective fencing, it was immaterial whether such defect was in the fences proper or in the cattle guard connecting with same and considered under the charge of the court a part thereof. Whether such cattle guard or such fences were in fact defective was left to the jury under the issue as submitted.

[6] Appellee's witness Stash Kanope was permitted, over the objection of appellant, to testify in substance that he examined the right of way fence where the mule was found about two weeks before the trial; that he had not made such an examination prior thereto; that he found the posts in part of the fence 30 feet apart; that he found a burnt post about that place; and that the fence at one place near there was only 2 feet 10 inches high. The trial occurred more than a year after the mule was killed. The objection urged by appellant was that the condition of the fence at the time of the trial was immaterial and too remote to be considered in determining the condition of such fence at the time of the accident. Said witness in this connection further testified concerning the fence at this place as follows:

"As to whether I was frequently through that pasture, I will state that I had stock in there; I was down there about once a week. I didn't notice any change that was made in that fence from the time the mule was killed up to the time I noticed it the other day. The fence has been there as long as I know. I saw the fence before the mule was killed at that place, and I saw it two weeks ago, and there had not been any change in the fence at that time."

The witness further testified that he did not know how high the fence was at the time the mule was killed; that he had not measured the height of the fence nor paid any attention to its height until his examination of same just before the trial. He also testified that he did not know when the post was burned nor whether or not it was burned at the time the mule was killed; that he had not seen any fire there since that time, but that the post looked to him like it had been burned a long time ago. If, as testified by him, the fence at the time he examined it was in the same condition it was at the time of the accident,

his testimony concerning its condition at the time of such examination was competent. If, during the course of his examination as a witness he modified or contradicted his prior testimony on any point, such modification or contradiction presented a question to be solved by the jury and not by the court. His entire testimony was before the jury and they were the judges of the weight to be given to the same as a whole. We do not think appellant's bills of exception when considered together and in connection with the facts in evidence show reversible error.

We have considered all appellant's propositions, and we do not believe any of them require reversal of the judgment appealed from, and it is therefore affirmed.